**In re GRAND JURY PROCEEDING 82-2.**

**Edward Robert NIGRO, Jr., (Real Party in Interest,) Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 82-2422.**

United States Court of Appeals, Tenth Circuit.

Dec. 16, 1982.
Certiorari Denied May 16, 1983.
See 103 S.Ct. 2087.

John D. Kaufmann, Tucson, Ariz., for appellant.

Gerald J. Rafferty, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., with him on the brief), for appellee.

Before DOYLE, McKAY and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Appellant Edward Nigro seeks to reverse entry of a contempt citation by the District Court of the District of Colorado and seeks also remand with instructions that he be free to invoke his fifth amendment privilege against self-incrimination before the grand jury and to have it applicable to a matter which would incriminate him in foreign countries. Nigro assigns a number of grounds in support of his demand for relief. All were considered by the trial court except one, which is whether there should have been a hearing regarding facts which would mitigate the contempt sanctions. The grand jury which was investigating alleged violations of federal narcotics, customs and other laws, subpoenaed Nigro to appear before it and give testimony on July 27 and 28, 1982. He did appear before the Grand Jury on the basis of issuance of a writ of habeas corpus. He refused, however, to testify. Instead he invoked his privilege against self-incrimination. Thereupon following a motion by the United States Attorney the trial court entered an order granting immunity pursuant to 18 U.S.C. §§ 6002 and 6003. The court order dated July 28, 1982, is in part as follows:

1. That the witness Edward Robert Nigro give testimony or provide other information which he refuses to give or to provide on the basis of his privilege against self-incrimination as to all matters about which he may be interrogated before said grand jury;

2. That no testimony or other information compelled under this order (or any information directly or indirectly derived from such testimony or other information) may be used against said witness in any criminal case, in any court, except a prosecution for perjury, giving a false statement or otherwise failing to comply with this order.

The questions which Mr. Nigro refused to answer had to do with illegal import and export of money between the United States and foreign countries; illegal laundering of narcotics money inside and outside the territory of the United States; illegal laundering of narcotics money through offshore corporations or banks; and sources of money received from operation of narcotics operation. Nigro was called back before the grand jury and given another opportunity to answer questions, but he refused again to answer anything and thereupon the government moved that the trial court punish Nigro for his refusal to comply with the court order compelling his testimony pursuant to 28 U.S.C. § 1826(a).

Thereupon Nigro sought to have the grand jury subpoena quashed on the basis that the court's immunity order would not extend to foreign prosecutions and, secondly, that it would not afford him protection co-extensive with his privilege against self-incrimination. He also alleged procedural irregularities and directed other attacks against his incarceration.

On September 24, 1982 a hearing was held. A carefully written opinion was issued on November 17, 1982 by the trial court. It rejected all of the grounds Mr. Nigro asserted in his effort to justify his refusal to testify notwithstanding his grant of immunity.

The trial court gave no acceptance to the foreign prosecution point. The judge said: "Neither at the hearings nor in the briefs has Mr. Nigro established that his fears of foreign prosecution are real, substantial and reasonable and based on objective facts as distinguished from his subjective speculation." The court further found that Mr. Nigro showed insufficient connection between the areas of the grand jury's inquiry and potential foreign prosecution for his testimony. Thus there was no evidence that if charges were filed in a foreign country, Nigro would be subject to extradition from the United States; there was insufficient evidence to believe that Nigro's testimony would be disclosed to a foreign government; and there was no showing of a risk that the evidence might incriminate Nigro in a foreign jurisdiction.

Also found by the trial court was that Nigro's claims were generally without merit. His motions for discovery were premature and contrary to Rule 6(e), F.R.Cr.P. He was an immunized witness before the grand jury and was not a target in the proceedings. His contention that he could not comply with the order to testify because the government's questions were tainted by illegal electronic surveillance were rejected because the trial court found that only valid consensual surveillance occurred and that the government would give the transcripts of those conversations to Mr. Nigro.

The further contention of Nigro was that some of the questions he was asked before the grand jury included information derived from plea discussions held in Tucson, Arizona about possible charges in Colorado conducted pursuant to Rule 11(e)(6), F.R.Cr.P. These discussions did not result in any agreement and Nigro entered a guilty plea to the Arizona charges in the United States District Court for Arizona. The trial court ruled that since such a plea was entered Mr. Nigro's statements were available to the government under Rule 11(e)(6)(D), F.R. Cr.P. Therefore, Mr. Nigro could not be excused from testifying before the grand jury on such a basis.

Also rejected by the trial court was Nigro's assertion that the grand jury proceedings had been tainted; this as a result of an Assistant United States Attorney, a court reporter and Nigro himself being present during the deliberations and voting of the grand jury. The "deliberations" were only a momentary consideration which occurred after the United States Attorney asked members of the grand jury whether they approved of his taking Mr. Nigro before the United States District Court to seek immunity and an order compelling him to testify. The trial court viewed the taint as insignificant and only a technical violation of Rule 6(d) F.R.Cr.P. Inasmuch as Nigro was an immunized witness he was not prejudiced in any event.

The trial court concluded that there was nothing in the record that precluded Nigro from testifying before the grand jury and the trial court found him in civil contempt for his refusal to obey its lawful order. He is subject to being confined until he agrees to testify before the grand jury or until the particular grand jury is terminated. The time spent in jail by Nigro as a result of this contempt sentence is not to be credited to the sentences he is already serving.

Defendant has tendered numerous contentions. We do not deem it necessary to consider each and every one. These can be reduced to the following:

## I.

That the District Court erred in that it violated 28 U.S.C. 1826 by not issuing an order to show cause, by failing to give adequate notice.

## II.

That the trial court erred in determining that the fifth amendment (of the Constitution) is inapplicable to foreign prosecu-

tion and that the appellant does not face a real and substantial fear of the foreign prosecution.

### A.

That the fifth amendment applies to the threat of prosecution.

### B.

That the immunity granted was not co-extensive with the fifth amendment privilege against self-incrimination.

There is only one essential problem and we address ourselves to that. We consider in detail only one of appellant's contentions.

1. *Adequacy of Safeguards for grand jury secrecy.*

Mr. Nigro's fifth amendment arguments lose their importance if the emphasis is placed where it belongs, that is on the sufficiency of Rule 6(e), F.R.Cr.P. That rule's guarantees of secrecy for Mr. Nigro's compelled disclosures are such that he has no reason to fear foreign prosecutions based on his grand jury testimony. The trial court followed the majority of circuits when it concluded that "in view of the power and duty of this court to preserve the secrecy of grand jury matters, no 'real and substantial' danger of foreign prosecution exists based on his ordered testimony." This court can confidently affirm that rule.

The Supreme Court in *Zicarelli v. New Jersey Investigation Comm'n,* 406 U.S. 472, 478, 92 S.Ct. 1670, 1675, 32 L.Ed.2d 234 set forth the standard that a witness must satisfy to invoke the privilege against self-incrimination. Applied to Mr. Nigro *Zicarelli* means he must show that his fears of foreign prosecution are real, and based upon objective facts; the fifth amendment privilege "protects against real dangers, not remote and speculative possibilities." *Id.* The majority of the circuits which have considered whether an immunized witness is compelled to testify before a grand jury was adequately protected from leaks of his testimony to foreign authorities seeking to prosecute him, have held that grand jury proceedings are sufficiently secret to elimi-

nate any reasonable concerns the witness may have as to foreign prosecutions. *In re Baird,* 668 F.2d 432, 434 (8th Cir.), *cert. denied,* 456 U.S. 982, 102 S.Ct. 2255, 72 L.Ed.2d 860 (1982); *United States v. Brummitt,* 665 F.2d 521, 525–26 (5th Cir.1981), *cert. denied,* 456 U.S. 977, 102 S.Ct. 2244, 72 L.Ed.2d 852 (1982); *In re Campbell,* 628 F.2d 1260, 1262 (9th Cir.1980); *In re Federal Grand Jury Witness (Lemieux),* 597 F.2d 1166, 1167–68 (9th Cir.1979); *In re Grand Jury Proceedings (Postal),* 559 F.2d 234, 236–37, (5th Cir.1977), *cert. denied,* 434 U.S. 1062, 98 S.Ct. 1234, 55 L.Ed.2d 762 (1978); *In re Weir,* 495 F.2d 879, 881 (9th Cir.), *cert. denied,* 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974); *United States v. Armstrong,* 476 F.2d 313, 316 (5th Cir.1973); *In re Tierney,* 465 F.2d 806, 812 (5th Cir.1972), *cert. denied,* 410 U.S. 914, 93 S.Ct. 959, 35 L.Ed.2d 276 (1973).

This court has already affirmed the adequacy of Rule 6(e), F.R.Cr.P. as a safeguard for the secrecy of immunized testimony before a grand jury where there was a threat of foreign prosecution alleged. *In re Parker,* 411 F.2d 1067, 1070 (10th Cir.1969), *vacated as moot sub nom. Parker v. United States,* 397 U.S. 96, 90 S.Ct. 819, 25 L.Ed.2d 81 (1970). Our viewpoint on this has not changed.

The few courts which have expressed reservations about the secrecy of grand jury proceedings have pointed out a number of factors which suggest that such proceedings cannot be leakproof. The Second Circuit's recent decision, *In re Flanagan,* 691 F.2d 116 (2nd Cir.1982), for instance makes the following points:

1. Grand jurors or government agents might inadvertently leak testimony to reporters.

2. Other defendants can require disclosure of grand jury minutes containing exculpatory material under *Brady v. Maryland,* 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963).

3. Defendants can also require trial witnesses to disclose their grand jury testimony regarding matters testified to on direct examination. 18 U.S.C. § 3500(e)(3).

4. Courts permit disclosure of grand jury minutes when they are relevant to a motion to dismiss an indictment, or raising a double jeopardy claim or challenging a search warrant, or concerning post-conviction proceedings.

5. Grand jury records can also be released for use in private litigation.

See *Flanagan, supra,* at 123, and the authorities cited therein. *See also In re Federal Grand Jury Witness (Lemieux),* 597 F.2d 1166, 1168–69 (9th Cir.1979) (Hufstedler, J., concurring); *In re Cardassi,* 351 F.Supp. 1080 (D.C.Conn.1972). The suggestions do not rise above remote possibilities.

This court is not unaware of the hesitancy of a witness in Nigro's position even though Nigro is solely responsible for the difficulty of his position. He has violated the laws of several countries and must testify about those illegal activities before a grand jury if the trial court's order is affirmed. He must weigh the certainty of a contempt citation here against the likelihood of someday being prosecuted abroad should he be extradited or otherwise come within the jurisdiction of foreign laws he has broken. He has been, however, given immunity so he is not too bad off.

To protect him from the possibility of facing foreign prosecutions based on incriminating disclosures before the grand jury this court should affirm the trial court's contempt citation, but return the case to that court with the following recommendations which will promote and support secrecy by adherence to Rule 6(e) in Mr. Nigro's case:

1. The district court should require all participants in the grand jury proceedings to take an oath of secrecy regarding Mr. Nigro's testimony.

2. The transcript of his immunized testimony should be sealed.

3. Future requests for disclosure should be reviewed *in camera* by the district court which should zealously protect the immunity it conferred upon Mr. Nigro.

These measures are endorsed by the United States as appellee, *see* Appellee's Brief at 12–13, and this type of protection has found approval in other decisions; *In re Federal Grand Jury Witness (Lemieux),* 597 F.2d 1166, 1167–68 (9th Cir.1979); *In re Tierney,* 465 F.2d 806, 812 (5th Cir.1972), cert. denied, 410 U.S. 914, 93 S.Ct. 959, 35 L.Ed.2d 276 (1973).

The affirmation of *Parker* above means it is unnecessary to consider whether Mr. Nigro showed a sufficient risk of foreign prosecution to entitle him to remain silent. The conclusion that Rule 6(e), F.R.Cr.P., as bolstered by the recommendations above, will adequately protect the secrecy of Mr. Nigro's disclosures makes irrelevant an inquiry into the likelihood of the risks of foreign prosecutions he may face.

2. *Grand Jury Proceedings and Civil Contempt Procedures*

Due to the constraints of 28 U.S.C. § 1826(b) which purports to require this court to decide this appeal within 30 days of its filing, it is impossible to address in this opinion each issue Mr. Nigro raises as fully as this court might do in less hurried circumstances.

The court has considered the positions presented in the briefs and oral arguments. We find no error in the trial court's conclusions of law expressed in its Memorandum Opinion and summarized above. It follows that the judgment of the district court including the contempt citation against Mr. Nigro should be affirmed. It is so ordered. We do not consider the other contention based upon the fifth amendment. Our ruling renders this unnecessary.